

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Zachary A. Myers
Assistant United States Attorney
Zachary.Myers@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4848
MAIN: 410-209-4800
FAX: 410-962-0716

December 17, 2015

Laura G. Abelson
Assistant Federal Public Defender
100 S Charles St Twr II 9th Fl
Baltimore, MD 21201

Re:   *United States v. James J. Stanley*, Criminal No. GLR-15-0432.

Dear Ms. Abelson:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on **December 31, 2015**, it will be deemed withdrawn.

The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count Two of the Indictment, which charges him with Distribution of Child Pornography, in violation of Title 18, United States Code, Section 2252(a)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a.   On or about the date listed in the Indictment, the Defendant knowingly distributed a visual depiction;

   b.   The depiction was shipped or transported in and affecting interstate or foreign commerce by any means, including computer;

   c.   Producing the visual depiction involved using a minor engaged in sexually explicit conduct;

   d. The depiction is of a minor engaged in sexually explicit conduct; and

   e. The Defendant knew that at least one performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

## Penalties

3. The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for not less than five (5) years and not more than twenty (20) years, followed by a term of supervised release of not less than five years and not more than life and a fine of up to $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term— and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4. **Sex Offender Registration:** The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

i.  The Defendant further waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

### Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Count Two (Distribution of Child Pornography)

    a. **Base Offense Level:** The base offense level is twenty-two (22) pursuant to U.S.S.G. §2G2.2(a)(2).

    b. **Minor under Twelve:** Pursuant to U.S.S.G. §2G2.2(b)(2), there is a two (2) level increase because the depiction involved a prepubescent child under the age of twelve (12).

    c. **Distribution:** Pursuant to U.S.S.G. §2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution other than distribution described in U.S.S.G. §2G2.2(b)(3)(A) through (E).

    d. **Sadistic or Masochistic Conduct:** Pursuant to U.S.S.G. §2G2.2(b)(4), there is a four (4) level increase because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence.

    e. **Pattern of Exploitation:** Pursuant to U.S.S.G. §2G2.2(b)(5), there is a five (5) level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

    f. **Use of a Computer:** Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the distribution involved the use of a computer.

    g. **Subtotal for Group 1:** Thus, the offense level applicable to the Defendant's conduct charged in Count Two of the Indictment is thirty-seven (37).

## Relevant Conduct (Attempted Sexual Exploitation of a Child)

      a.    **Base Offense Level:** The parties stipulate and agree that pursuant to U.S.S.G. §1B1.2(c), the Defendant's relevant conduct set forth in the stipulated factual basis constitutes Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a). Thus, the base offense level for this relevant conduct is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

      b.    **Minor Under Sixteen:** Pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a two (2) level increase because the offense involved a minor under the age of sixteen.

      c.    **Parent, Relative or Legal Guardian:** Pursuant to U.S.S.G. §2G2.1(b)(5), there is a two (2) level increase because the Defendant was a parent, relative or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care or supervisory control of the Defendant.

      d.    **Subtotal for Group 1:** Thus, the offense level applicable to the Defendant's Attempted Sexual Exploitation of a Child is thirty-six (36).

8.    **Grouping:** Pursuant to U.S.S.G. §3D1.1(a), Group 1 has an adjusted offense level of thirty-seven (37) and Group 2 has an adjusted offense level of thirty six (36). Thus, there is a two (2) level increase to the higher offense level, and the combined adjusted offense level is thirty-nine (39) prior to any adjustment for acceptance of responsibility.

9.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to acceptance of personal responsibility for his conduct up to, and through, his sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

10.    Thus, the final anticipated adjusted offense level is 36.

11.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.    This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines (other than that stated in ¶ 8, supra) will be raised or are in dispute.

13. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Rule 11(c)(1)(C) Plea

14. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that **a sentence between 120 months' (10 years) and 240 months' (20 years) imprisonment followed by lifetime supervised release** is the appropriate disposition of this case. For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose restitution or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

15. Following the Defendant's plea of guilty to the offense charged in Count Two of the Indictment, and the imposition of sentence for that offense, the government agrees to move to dismiss all open counts as to the Defendant, with prejudice, pursuant to Federal Rule of Criminal Procedure 48(a).

16. If the Defendant is eligible and applies to transfer his sentence pursuant to the international prisoner transfer program, this Office agrees to support the Defendant's transfer application. The Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of Enforcement Operations ("OEO") of the Criminal Division of the United States Department of Justice and that the position of this Office is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OEO. Defendant further understands that in addition to OEO, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

### Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency

### Obstruction or Other Violations of Law

18.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

19.    The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C).

20.    The Defendant understands that in the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the advisory guideline or factual stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any other relevant information.

### Forfeiture

21.    The Defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on January 14, 2015, and further agrees to

take whatever steps are necessary to pass clear title to those properties to the United States, including, but not limited to:

    a. a custom "CoolMaster" tower computer;
    b. a Dell laptop computer;
    c. a Samsung mobile phone;
    d. a 4GB compact flash card; and,
    e. other computers and digital media seized from his residence.

### Restitution

22. For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Collection of Financial Obligations

23. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

24. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

25. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Entire Agreement

26. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: Zachary A. Myers
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12.21.15
Date

James J. Stanley

I am Mr. Stanley's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12/21/15
Date

Laura G. Abelson, Esq.

**EXHIBIT A**
**STIPULATED FACTS**

*The undersigned parties hereby stipulate and agree that the following facts are true, and if this case had proceeded to trial, the government would have proven them beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, James J. Stanley, age 29, is a former resident of Rising Sun, Cecil County, Maryland. Stanley is a citizen of the United Kingdom, and a lawful permanent resident of the United States. "Girl 1" is the pseudonym of a minor girl. Girl 1 was approximately 14 years of age at all relevant times. At times, Stanley had custody, care or supervisory control of Girl 1.

Omegle.com ("Omegle") is a website hosting anonymous, randomized, one-to-one video and text chat. Omegle allows users to seek chat partners without requiring the creation of an account or the providing of any identifying information, and markets itself as an opportunity for users to "Talk to strangers!" Omegle users are given the option of requesting a chat partner with a common interest, or simply being connected with another user at random. Omegle allows users to engage in text-based chat sessions with or without accompanying video from the user's webcam. In its privacy policy, Omegle informs users that webcam images may be captured from Omegle video chats, uploaded to Omegle's servers, and monitored for misbehavior as part of Omegle's moderation process, and may be shared with third parties.

ManyCam Virtual Webcam ("ManyCam") is software which, among other features, allows users to display images from their computers during video chat sessions, as though they were being captured live from their webcam.

On October 20, 2014, Stanley used a Logitech webcam, ManyCam virtual webcam software and his custom "CoolMaster" tower computer in his residence to engage in video chat on Omegle. During this Omegle video chat session, Stanley used ManyCam to display an image

1

which was then stored on his computer or other digital storage media, depicting a nude prepubescent girl lying on a bed, over a purple colored towel. The girl is blindfolded and her wrists are bound with bright yellow rope. A dog appears to be licking the girl's vaginal area.

On an unknown date before January 14, 2015, Stanley placed a digital video recording device in a shower he knew would be used by Girl 1, attempting to create video recordings of Girl 1 engaged in sexually explicit conduct, including recording a lascivious exhibition of Girl 1's genitals. Between November 14, 2014, and on or about January 14, 2015, Stanley caused a copy of a video file to be saved on his custom "CoolMaster" tower computer. This video file depicted Girl 1, nude, taking a shower. Girl 1's genital area is not visible in the video.

During an interview with law enforcement officers, Stanley stated that he used the internet to search for child pornography. Stanley stated that he would download the material, masturbate, and then delete the material. Stanley stated that he had been looking at child pornography for several years.

During another interview with law enforcement officers, Stanley stated that he used his mobile phone to record Girl 1 showering without her knowledge on approximately ten occasions, although other videos of Girl 1 were not recovered. Stanley stated that he attempted to masturbate to the recordings of Girl 1 showering, but could not.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

12-21-15
Date

James J. Stanley

I am James J. Stanley's attorney. I have carefully reviewed this statement of facts with him.

Laura G. Abelson, Esq.